## Freeman's Petition

*George H. Class*, for petitioner.
*Guy W. Davis*, for Secretary of Banking.

ERVIN and SWENEY, JJ., April 12, 1944.—On May 21, 1943, William C. Freeman, Secretary of Banking of the Commonwealth of Pennsylvania, receiver of Lansdowne Bank & Trust Company and Drexel Hill Title & Trust Company, presented a petition to the court for leave to sell at private sale, for a cash consideration of $750, a tract of land, being approximately 80 feet by 450 feet, located in the Township of Upper Darby, which property was described in the agreement attached to said petition. Notice of the intention to present the said petition was published in the Weekly Reporter and the Chester Times and proofs of publication have been filed. Because of renewed interest in bidding by certain adjacent owners, the receiver asked the court to continue the matter until May 28, 1943, and on the latter date asked the court to continue the matter until June 4, 1943, and on the latter date requested the court to continue the matter indefinitely. The petition, together with its exhibits and appraisals, has been on file in the prothonotary's office since June 3, 1943. H. Leonard Paret, a realtor, appraised the property at the sum of $1,000, and William G. Benham, a realtor, appraised the property at the sum of $1,200. On March 10, 1944, the receiver again presented his petition asking leave to sell at private sale to the same offerer as set forth in the first petition, at the increased price of $1,500. John V. Diggins, Esq., was present in court and expressed his desire to increase the bid over that then being submitted. The court orally directed that the matter be continued until March 17, 1944, when it would receive the highest offer presented and directed that all persons in interest be notified. On March 17, 1944, the court requested that all bids be submitted. The original petitioner submitted a bid of $1,500, subject to a five percent commission, and no other bid was submitted. John V.

Diggins, Esq., representing adjacent property owners, stated that he did not desire to make any higher offer. The court, on the same date, made a written decree authorizing private sale to Sarah B. Schroff, single-woman, the original petitioner, for the sum of $1,500 in cash, subject to a real estate commission of $75 to Robert Jackson, Inc., agent. On March 31, 1944, George H. Class, Esq., filed a petition, which was presented to the court on April 6, 1944, praying for a rule to show cause why the approval of sale should not be withdrawn and the bidding reopened. Written briefs were presented and the matter orally argued before Judges Ervin and Sweney on April 6, 1944, and the matter is now for disposition. In his petition, George H. Class, the petitioner, avers that when the petition for private sale was before the court in the spring of 1943 he became interested in the sale of the premises in behalf of a client and engaged in numerous conversations with the Department of Banking concerning this property; that as a result of said conversations the petitioner was informed that the proposed sale had been indefinitely suspended and that the entire matter would be reconsidered and petitioner would be informed of any future developments in connection therewith; that the petitioner heard nothing further concerning the matter until Friday, March 17, 1944, when he overheard the matter being brought up in motion court for competitive bidding; that petitioner immediately endeavored to communicate with his client to see if said client was still interested in the property but upon returning to the courtroom thereafter found that the property had been sold for the sum of $1,500; that the petitioner represents a client who is ready and willing to offer the sum of $1,750, without commission, for the said premises.

## Discussion

It will be noted that the petitioner does not set forth that he ever made any offer to the receiver. Mr. Class, at the argument, admitted that no offer had ever been made. He also admitted that he was in motion court on Friday, March 17, 1944, and that he knew that bids were going to be presented to the court for the aforesaid property later on that morning but that he did not make any request to the court concerning the matter. Mr. Class could have asked the court to postpone the matter until he could have time to consult his client to ascertain whether the client was still interested, and a reasonable postponement would have been granted.

The Department of Banking Code of May 15, 1933, P. L. 565, art. VII, sec. 718, 71 PS §733-718, provides as follows:

"A. The secretary may, with leave of, and upon the terms and conditions prescribed by, the court, sell any real property of the institution of which he is in possession as receiver. The order of the court authorizing such sale shall state whether the sale shall be entirely for cash or partly for cash and partly for evidences of indebtedness, whether it shall be public or private, whether notice shall be given to depositors, other creditors, and shareholders, or to any of these groups, and whether advertisement shall be made. Unless the court, in any case, deems advertisement or notice necessary or desirable to protect the interests of the estate, such advertisement or notice shall not be required.

"Where the order of the court provides for advertisement, it shall in no case require that there be more than a single insertion in one newspaper of general circulation in the county, and, in first-class counties, in one legal newspaper. Where real property which is to be sold is situated in a county other than the one in which the institution is located, the court may also authorize a single insertion in a newspaper of general

circulation in such other county, and, in first-class counties, in one legal newspaper.

"Every such sale of real property shall be confirmed by the court, if all the terms and conditions of its order authorizing such sale have been complied with.".

This section has been interpreted by the Courts of Common Pleas of Dauphin, Montgomery, Philadelphia, Schuylkill, and Northumberland Counties, these courts uniformly holding that where the receiver of a closed bank enters into an agreement to sell a parcel of real estate owned by a bank, and where the court approves the sale to a named purchaser at a specified price, the court will not entertain a subsequent and higher offer where there is neither allegation nor proof that the prior sale was attended by fraud, accident, mistake, or other considerations that would ordinarily move a court of equity to set aside a sale of real estate. The reasoning is, as set forth in In re Central Trust & Savings Co., 41 D. & C. 304, 307 (C. P. No. 1 of Philadelphia Co., 1941) :

"If a sale is to be upset upon the receipt of higher offers after the court has approved it, buyers would soon become discouraged and would lose interest in any of the real estate offered for sale by the Secretary of Banking.

"If, after the court's mandate to the Secretary of Banking to sell at a named price to a certain purchaser, the sale could, as a matter of course, be upset by the mere receipt of a higher offer, sales of real estate by the Secretary of Banking would become farcical and rational men would shun them and refuse to bid. The result would be that liquidation would be greatly retarded and the total cost thereof would greatly increase, so that any temporary benefit to be had from the acceptance of the increased offer would be outweighed by the resulting decrease in eventual total returns to the depositors, creditors, and shareholders of the closed bank.

"There must be a point at which the sale becomes final, so that thereafter it is possible for the purchaser to act with certainty in matters relative to his purchase. Section 718A [above referred to] has fixed that point as the date when the court approves a proposed sale submitted to it."

See also In re Mechanics Trust Co., 39 D. & C. 202 (1940) (C. P. of Dauphin Co.); In the Matter of John C. Bell, Jr., Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of The Willow Grove Trust Co., no. 14, September term, 1931, C. P. of Montgomery Co. (1940), unreported. Full text of this opinion is attached as an exhibit to the receiver's brief filed in this matter.

To the same effect see also Morrison et al. v. Burnette et al. (C. C. A. 8), 154 Fed. 617, 624 (1907), and cases therein cited; In re Spokane Savings Bank, 198 Wash. 665, 670 (1939); Pewabic Mining Co. & Mason, 145 U. S. 349, 356 (1892); Hardy et al. v. Coley et al., 114 Va. 570 (1913); Moore v. Triplett, 96 Va. 603, 610 (1899); Files v. Brown, 124 Fed. 133, 137 (1903).

In the present case there is no fraud, accident, or mistake averred in the petition to set aside the sale. From the remarks of counsel at argument we do not see how there could be any such averment. If the petitioner had made an offer to the receiver or had made a deposit to show his good faith, the matter might be different. In this case the petitioner actually knew prior to the receipt of bids by the court that they were going to be received later on in the day. Petitioner could have stated to the court his interest in the matter and he would have received proper attention. To permit the petitioner to await the outcome of the public bidding in open court and then subsequently to top the offer is not the kind of a transaction that would move a court of equity to set aside this decree of sale.